# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 17-5523-GW(RAOx) | Date | June 7, 2018 |
|---|---|---|---|
| Title | *Jayhawk Private Equity Fund II LP v. Liberty Insurance Underwriters, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | Amy C. Diaz | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Laurence M. Rosen | Jenni K. Katzer |
| | Charles C. Lemley |
| | Valerie D. Rojas |
| | Randolph P. Sinnitt |

**PROCEEDINGS:**  **DEFENDANT XL SPECIALITY INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) [57];**

**DEFENDANT LIBERTY INSURANCE UNDERWRITERS INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) [59]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court GRANTS both motions, without leave to amend.

A status conference is set for June 28, 2018 at 8:30 a.m., with a joint report as to what remains to be filed by noon on June 26, 2018.

|  | : | 10 |
|---|---|---|
| Initials of Preparer | JG | |

*__Jayhawk Private Equity Fund II, L.P. v. Liberty Ins. Underwriters Inc., et al__*, Case No.
2:17-cv-05523-GW-(RAOx).   Tentative Rulings on: (1) Defendant Liberty Insurance
Underwriters Inc.'s Motion to Dismiss Second Amended Complaint Pursuant to F.R.C.P.
12(b)(6), and (2) Defendant XL Specialty Insurance Company's Motion to Dismiss

## I.  __Background__

Jayhawk Private Equity Fund II, L.P., on Behalf of a Certain Certified Class
("Jayhawk"), and ChinaCast Litigation Trust ("ChinaCast Trust" and, together with
Jayhawk, "Plaintiffs"), filed a Second Amended Complaint ("SAC") in this action on
April 2, 2018, asserting six claims for relief against Liberty Insurance Underwriters Inc.
("Liberty"), Berkley Insurance Company ("Berkley") and XL Specialty Insurance
Company ("XL"):  1) breach of contract under securities claims insurance policies –
payment of the judgment; 2) breach of contract under securities claims insurance policies
– payment of the defense costs; 3) judgment creditor's action against insurer based on
breach of contract under securities claims insurance policies; 4) breach of the covenant of
good faith and fair dealing; 5) declaratory judgment; and 6) breach of third party
beneficiary contract.  *See* Docket No. 54.  ChinaCast Trust brings the first, second and
fourth claims, while Jayhawk brings the third and sixth, with both Plaintiffs asserting the
fifth.  All six claims are pled against both Liberty and XL, who have now separately
moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

The case involves the resolution – as the result of a default judgment – of a
securities lawsuit brought against ChinaCast Education Corporation ("ChinaCast"), *In re
ChinaCast Education Corporation Securities Litigation*, Case No. 2:12-cv-04621-JFW-
PLA ("the Securities Litigation"), and insurance policies Plaintiffs allege cover the $65.8
million judgment resulting from that lawsuit and the almost $7 million in legal fees
incurred in the course of that lawsuit.  *See* SAC ¶¶ 2, 4, 13.  At issue on these motions are
the 2011 policy Liberty issued to ChinaCast that originally covered the period of
December 1, 2010 to December 1, 2011, but that was extended by way of a "Run-Off

---

[1] Berkley's policy is excess to Liberty's primary policy, to which Berkley's policy "follows form."  *See*
Docket No. 56, at 1:10-19.  Because Berkley's response to the SAC "will necessarily depend on the
resolution of issues raised in Liberty's motion," *id.* at 1:22-23, the parties have stipulated that Berkley's
response to the SAC will follow decision on Liberty's motion.  *See generally id.*  As such, Berkley has not
moved to dismiss.

Endorsement" to also cover December 1, 2011 to December 1, 2012 ("the Liberty Policy"), and the 2012 policy XL issued to ChinaCast that covered the period of December 1, 2011 to December 1, 2012 ("the XL Primary Policy").  *See id.* at 9:19-10:14, 10:19-23, 11:10-13, 13:1-8.[2]  Both are "primary" policies, though XL also issued an "excess" policy – in fact, a "second excess" policy – that covered the same time period as the Liberty Policy.  *See id.* at 9:19-10:14, 11:10-13, 11:23-12:5, 13:1-8.

## II. <u>Analysis</u>

### A.  Procedural Standard

Under Rule 12(b)(6), a court must (1) construe a complaint in the light most favorable to the plaintiffs, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).  However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570); *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases").  A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

---

[2] Beginning at page 9, line 19 of the SAC, the paragraph numbering starts anew.  As such, the Court refers only to paragraph numbers in the SAC when it is citing one of the first 37 paragraphs found in the first nine pages of the document.  All other citations are to page and line numbers of the SAC.

at 556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'"  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).  In this respect, "'a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'"  *Id.* (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

In its consideration of the motion, the court is generally limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  However, "[a] court may [also] consider evidence on which the complaint 'necessarily relies' if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

Consistent with the foregoing principles, this Court concludes that it may, as part of its analysis of these motions, consider both the Liberty Policy and the XL Primary Policy and the allegations made in the Securities Litigation.  Plaintiffs have specifically referenced the allegations made in the Securities Litigation (indeed, the SAC specifically incorporates-by-reference the Consolidated Class Action Complaint filed in that action). *See, e.g.*, SAC ¶ 9; *id.* at 14:12-21, 14:27.  They also have not objected to the requests for judicial notice both Defendants have filed seeking to have the Court take judicial notice of the Consolidated Class Action Complaint filed in the Securities Litigation.  *See* Docket Nos. 58, 61.  In addition, the terms of the policies are central to Plaintiffs' claims herein,

and the SAC repeatedly refers to various provisions found in those policies.[3]

Two terms – both exclusions – are central to consideration of the motions before the Court.  By way of a "Run-Off Endorsement," Liberty and ChinaCast added an exclusion to coverage for loss in connection with any claim "based upon, arising from or in any way related to any Wrongful Act committed or allegedly committed *on or after* December 1, 2011.  Docket No. 54-2, at pgs. 7, 46 (emphasis added).  The XL Primary Policy, meanwhile, contains a "Prior Acts Exclusion," excluding claims "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any act, error, omission, misstatement, misleading statement, neglect, breach of duty, Wrongful Act, Company Wrongful Act or Employment Wrongful Act committed or allegedly committed *prior* to December 1, 2011.  Docket No. 54-5, at pg. 19 (emphasis added).

### B.  Motion One – Liberty's MTD

Liberty moves to dismiss based on two theories:  1) that Plaintiffs' claims are time-barred because Liberty unconditionally denied coverage as to indemnity and advancement of defense costs almost five years before Plaintiffs filed this lawsuit; and 2) the language of the aforementioned "Run-Off Endorsement" – which extended the December 1, 2010 to December 1, 2011, policy period one year to December 1, 2012 – precludes coverage by having simultaneously put in place an exclusion indicating that Liberty "shall not be liable to make any payment for **Loss** in connection with any **Claim** . . . based upon, arising from or in any way related to any Wrongful Act committed or allegedly committed on or after December 1, 2011."   Before considering those arguments, however, Plaintiffs specifically raise a choice-of-law issue in both the SAC and their Opposition to the two motions presently before the Court.[4]

---

[3] The SAC specifically lists the insurance policies at issue in this case.  *See* SAC at 9:19-13:14.  It admits that Defendants rejected Plaintiffs' request for payments of the amounts at issue here based upon "untenable and unreasonably expansive interpretations of the exclusion provisions."  SAC ¶ 19; *see also id.* ¶¶ 21-22; *id.* at 17:14-16, 17:21-18:7.  It also references (and attempts to reflect the contents of) the Endorsement No. 24 "Run-Off Endorsement" in the Liberty Policy and the "prior acts exclusion pursuant to the Endorsement No. 7" in the XL Primary Policy.  *See id.* at 10:15-12:11, 27:18-20, 27:24-29:7.

[4] Plaintiffs have authored a single Opposition to both motions.  *See* Docket No. 64, at 1 n.1.  The Court's analysis of several of the arguments Plaintiffs raise in that Opposition is applicable to both Liberty's and XL's motions, and will not be revisited separately in the context of the Court's discussion of XL's motion.

1.   <u>Choice of Law</u>

Plaintiffs believe that Delaware's substantive law applies here, but "reference the law of both Delaware and California" because "the Court has not yet passed on the choice-of-law issue."   Docket No. 64, at 3:15-23.   As an initial matter, in the SAC, Plaintiffs asserted that Delaware law applies under California Civil Code § 1646[5].   *See* SAC ¶¶ 33-37.   But Plaintiffs make no mention of Section 1646 in their Opposition.   As such, the Court considers Plaintiffs to have waived that issue, at least for purposes of resolution of these motions.

Plaintiffs argue in their Opposition that California's governmental interest analysis is used to assess choice-of-law questions with respect to statutes of limitation, citing *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484-85 (9th Cir. 1987), and *Deutsch v. Turner Corp.*, 324 F.3d 692, 716 (9th Cir. 2003).   *But see Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436, 1454 (2007) (concluding that "the governmental interest analysis as developed by the California Supreme Court . . . does not supplant the legislative command of section 1646"); *Arno v. Club Med Inc.*, 22 F.3d 1464, 1468 n.6 (9th Cir. 1994).   But Plaintiffs have not actually identified any way in which Delaware and California law differ with respect to any issue – statute of limitations or otherwise – relevant to either of the two motions.[6]   That question of difference in law is the first step in the governmental interest approach, *see Ledesma*, 816 F.2d at 484, and "[t]he proponent of using foreign law" – here, Plaintiffs, apparently – "has the initial burden of showing material differences," *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1233 (9th Cir. 2011); *see also Wash. Mut. Bank, FA v. Superior Court*, 24 Cal.4th 906, 919-20 (2001).   Having not actually identified any difference in the two States' laws, Plaintiffs have failed to shoulder that burden.

It appears, therefore, that the choice-of-law issue Plaintiffs nominally present is, in fact, a non-issue here.

---

[5] "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646.

[6] For instance, Liberty notes in its Reply that Plaintiffs have agreed that the applicable statute of limitations is four years.

2.   Statute of Limitations

Liberty asserts that California's four-year statute of limitations applies to each of Plaintiffs' claims (with the exception of a 2-year period applying to any *tortious* breach of the implied covenant claim alleged in the SAC), citing to *Cossman v. DaimlerChrysler Corp.*, 108 Cal.App.4th 370, 376 (2003) and *Deutsch*, 324 F.3d at 716, among other cases.   It then asserts that, for any breach of an insurance policy, the limitations period begins when the insurer unconditionally denies coverage, which Liberty asserts occurred here on August 23, 2012, as alleged in the SAC.   *See* SAC at 17:14-16 & Exh. 6.

On this issue, Plaintiffs' response is to argue that Liberty has erroneously relied, for its argument, on cases dealing with *first-party* insurance policies, instead of the liability – or third-party – policies at issue here.   It is when the default judgment became final – less than two years prior to the Complaint's filing – that the statutes of limitation began to run, in Plaintiffs' view.   Liberty responds that the cases Plaintiffs cite make no distinction between first- and third-party insurance, and only provide limited exceptions for accruals (or apply equitable tolling) based on types of claims and/or policies that are not present here.

In the end, because (as addressed *infra*) Plaintiffs appear to clearly lose on the coverage issues posed by this case (or at least by these motions), it does not appear to the Court that it needs to reach, or resolve, the statute of limitations issue.[7]   *See Moran v. Selig*, 447 F.3d 748, 753 n.8 (9th Cir. 2006) ("Appellees argue that appellants' Title VII claim is barred by the statute of limitations.   The district court questioned the parties' counsel about this issue, but ultimately did not rule on it.   Although we think it likely that appellees are correct on this point, we see no need to reach the statute of limitations issue

---

[7] Responding to an issue it believes was raised by one of the cases Plaintiffs cited in their Opposition, Liberty posits, for the first time in its Reply, that Jayhawk lacks standing to maintain this lawsuit as a plaintiff.   *See* Docket No. 69, at 5:14-21.   A moving party may not raise a wholly-new argument for the first time in a reply brief.   *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").   Although standing is an issue that a court should analyze *sua sponte*, at this point in time the issue is not presented clearly enough for the Court to render an opinion on the issue.   In any event, neither of the Defendants challenge the standing of ChinaCast Trust, and the merits of the coverage issues presented by these motions are clear enough.   *See Bd. of Nat. Res. of State of Wash. v. Brown*, 992 F.2d 937, 942 (9th Cir. 1993) ("If any one of these three [plaintiff-appellants] has standing, we may reach the merits of the equal protection argument without considering whether the other two also have standing."); *see also City of Charleston v. Pub. Serv. Comm'n of W. Va.*, 57 F.3d 385, 390 (4th Cir. 1995).   If this case continues on past the proceedings on these motions, however, Jayhawk's standing may be an issue worth exploring in further detail.

because we agree with the district court's decision on the merits of the claim."); *Eichman v. Fotomat Corp.*, 880 F.2d 149, 159-60 (9th Cir. 1989) ("We need not resolve the question of the applicable statute of limitations, because we conclude, *infra*, that the district court properly granted Fotomat summary judgment on the merits of this claim."). That being said, Plaintiffs appear to take the position that Defendants' *only* challenge to their declaratory relief action is a statute of limitations-based challenge.  *See* Docket No. 64, at 6:1-2.  But Plaintiffs' claim for declaratory relief concerns "whether Defendants have a duty to indemnify Plaintiff ChinaCast Trust for the judgment obtained by Jayhawk [in] the Securities Litigation," SAC at 38:3-6, and "the parties' respective rights and obligations under the Securities Claims Insurance Policies," *id.* at 38:14-16.  If there is an angle to those issues that is not resolved by the Court's determinations on the coverage issue herein, it is not obvious.  Indeed, the SAC elsewhere alleges that "[t]he controversy between the parties is likely to be resolved, and the need for further litigation limited or eliminated, by the Court's declaratory judgment on the issue of coverage under the Securities Claims Insurance Policies."  *Id.* at 38:23-25.  If Plaintiffs believe there is something more to their claims than what would be resolved by way of the Court's ruling on these two motions,[8] such that a resolution of the statute-of-limitations issue is truly necessary, they should make that clear at the hearing.

### 3.   The Effect of the Run-Off Endorsement

Liberty notes that the Run-Off Endorsement effected multiple changes in the Liberty Policy.  In addition to adding an exclusion for "**Loss** in connection with any **Claim** . . . based upon, arising from or in any way related to any Wrongful Act committed or allegedly committed on or after December 1, 2011" and extending the policy period to December 1, 2012, it also amended Insuring Agreements 1.1, 1.2 and 1.3 to cover Claims only for Wrongful Acts taking place *prior to* December 1, 2011.  *See* Docket No. 54-2, at pg. 46.  In other words, if there were no Wrongful Acts *prior to* December 1, 2011, there would be no coverage under the Liberty Policy to begin with.

---

[8] For instance, the declaratory relief claim also concerns the operation of exhaustion principles insofar it impacts the duties of excess insurance policies, and coverage under those excess policies.  *See* SAC at 39:3-40:2.  However, Plaintiffs admit that "the excess policies 'follow form' of the underlying 2011 Liberty Primary Policy and are subject to the same duties and defenses to coverage."  *Id.* at 40:3-5.  The declaratory relief claim also identifies a number of sub-issues Plaintiffs seek answers to, *see id.* at 40:15-44:19, but it is not at all entirely clear that those issues remain "live" issues if the Court determines there is no coverage under either the Liberty Policy or XL Primary Policy at issue in these motions.

An exclusion, of course, is an *exception* to coverage.  *See, e.g.*, *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 16 (1995) (explaining that "exclusion clauses," at least in a commercial general liability policy, "remove coverage for risks that would otherwise fall within the insuring clause"); *see generally* Croskey, Heeseman, Ehrlich & Klee, CAL. PRAC. GUIDE:  INSURANCE LITIGATION (The Rutter Group 2017), ¶¶ 3:127-134, at 3-44 – 46.  Liberty therefore reasons that the Run-Off Endorsement's language which excluded coverage for all Loss resulting from a Claim "based upon, arising from or in any way related to any Wrongful Act committed or allegedly committed *on or after* December 1, 2011" must be taken to refer to "mixed" claims, *i.e.* claims that allege Wrongful Acts *both before and after* December 1, 2011.  They argue that if it were to refer only to Wrongful Acts committed on or after December 1, 2011, there would be no coverage at all to begin with.  Moreover, if it were to accomplish only that which had already been accomplished by way of changes to the Insuring Agreements and Policy Periods, *see* Docket No. 60, at 12:18-19 ("Those two changes by themselves prevented a Claim solely about Wrongful Acts committed after December 1, 2011 from coming within the grant of coverage."), it would run afoul of basic rules governing contract/insurance policy interpretation:  Liberty asserts – without challenge from Plaintiffs – that both California and Delaware law require that each word of an insurance policy's provisions must be given meaning.  *See, e.g.*, *In re Crystal Props., Ltd., L.P.*, 268 F.3d 743, 748 (9th Cir. 2001); *Advanced Network, Inc. v. Peerless Ins. Co.*, 190 Cal.App.4th 1054, 1063 (2010).

Plaintiffs argue that even if an insurer's interpretation is reasonable, it still would not prevail without establishing that its interpretation is the only reasonable one, citing *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 655 (2003) and *Penn Mut. Life Ins. Co. v. Oglesby*, 695 A.2d 1146, 1149-50 (Del. 1997).  But Plaintiffs have not pointed to any ambiguity,[9] or any other reasonable construction of its plain language.  They merely insist that it cannot possibly mean what it plainly says because it would mean no

---

[9] Although exclusions are interpreted strictly so that any ambiguity therein is resolved against an insurer, *see, e.g.*, *Morris v. Employers Reinsurance Corp.*, 84 Cal.App.4th 1026, 1029 (2000), and it is the insurer that bears the burden of proof with respect to application of an exclusion, *see, e.g.*, *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 16 (1995), the language here is clearly expansive, and Plaintiffs offer no reason to believe that there is any ambiguity.

coverage for the Securities Litigation.

Clearly, the allegations in the Securities Litigation presented a claim that was "based upon, arising from or in any way related to any Wrongful Act committed or allegedly committed on or after December 1, 2011." Liberty notes that the allegations in the Securities Litigation – which covered a class period extending to April 2, 2012 (i.e., *beyond* December 1, 2011) – included, at a minimum, assertions that ChinaCast made "materially false and misleading" statements in amendments to its 2010 10-K filed with the SEC on September 2, 2011, February 8, 2012, and February 24, 2012. *See* Docket No. 61-1, ¶¶ 62, 67; *see also id.* ¶ 121 (alleging that, "[d]uring the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Lead Plaintiffs and the other members of the Class . . . ."). Indeed, the SAC itself admits that the underlying lawsuit alleged wrongful acts during the period from February 14, 2011 through April 2, 2012. *See* SAC ¶ 9; *see also id.* at 14:12-15 ("The wrongful acts that Jayhawk alleges in the ChinaCast Securities Litigation were ChinaCast's issuance of misleading financial statements during the Class Period. The financial statements were misleading for failing to disclose related party transactions and internal controls deficiencies during the Class Period."); *id.* at 19:13-16 ("The securities violations in the Securities Litigation were based on disclosure violations for issuing misleading financial statements, as well as other misleading public statements from February 14, 2011 through at least March 12, 2012."); *id.* at 28:15-19 ("The Wrongful Acts alleged in the Securities Litigation are the Disclosure Violations. These are the failure to disclose related party transactions and internal control deficiencies in ChinaCast's financial statements issued to shareholders during the Class Period in violation of Section 10(b) of the Securities Exchange Act of 1934.").

Plaintiffs are concerned that interpretation of Liberty's and XL's primary policies as argued by Defendants would leave ChinaCast without coverage precisely because of the fact that the allegations in the Securities Litigation concern acts taking place on both sides of the December 1, 2011, divide. That Defendants – according to Plaintiffs – may not have "cited a single case in which any [c]ourt has enforced such exclusions to bar

coverage on a claim arising out [of] a continuing course of conduct that took place over the course of two coverage periods," Docket No. 64, at 19:1-3, is a somewhat empty observation (whether or not accurate) given the fact that all parties seemingly agree that language in an insurance policy – like any contract – is to be interpreted according to its plain meaning.

Liberty correctly observes that Plaintiffs never actually deal with the exclusion included in the Run-Off Endorsement, at least not in a way that responds to Liberty's point about its proposed construction of that language being the only one that gives the exclusion meaning/avoids surplusage. Instead, Plaintiffs first contend that the Liberty Policy and the XL Primary Policy must be "*jointly construed* to effectuate the intent of the parties." Docket No. 64, at 11:17-18 (emphasis added). They argue that this is necessary because, without doing so, ChinaCast's intent, as the insured, will not be recognized. Plaintiffs assert that it "is self-evident upon examining the Policies together, [that the provisions at issue in these motions] were negotiated for the purpose of facilitating the transfer of risk from the initial insurer, Liberty, to the successor insurer, XL." Docket No. 64, at 12:7-9; *see also* id. at 12:10-14:2 (presenting a further explanation of ChinaCast's intent in negotiating the two policies and asserting that "[t]he Run-off Endorsement was purchased for the 2011 Liberty Policy concurrently with the purchase of the XL 2012 Policy")). In contrast, Plaintiffs assert, "Defendants' proposed interpretation of the interaction between the policies would eviscerate [Plaintiffs'] reasonable expectation." *Id.* at 13:26-14:2.

But Defendants have *not* proposed an "interpretation of the interaction between the policies"; they have merely argued that the plain language of each of their policies clearly excludes coverage for the claims. Moreover, as both Defendants point out, not only have Plaintiffs failed to cite the Court to any case standing for their "joint construction" proposition,[10] *see, e.g.*, Docket No. 69, at 8:14-16 ("Plaintiffs cite no

---

[10] Plaintiffs offer that the recognized principle of contract interpretation that "'[a] writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together,' . . . permits the court to consider separate agreements entered into as part of a single overarching transaction in order to ascertain and effectuate the intent of the parties." Docket No. 64, at 11:25-12:2. For the quotation found within this proposition, Plaintiffs offer a citation to the RESTATEMENT (SECOND) OF CONTRACTS. For the seemingly-novel suggestion that comes after that quotation, Plaintiffs offer no citation whatsoever – not under California, Delaware, or any other law.

authority suggesting that two separate insurance policies, from different insurers, for different time periods, should be construed together."), there is nothing in the SAC alleging that there was any sort of coordinated negotiation of the Defendants' policies to accomplish what Plaintiffs now say was ChinaCast's intent.  As such, even if Plaintiffs were correct in their legal proposition, the Court could not possibly deny Liberty's and XL's motion upon application of that proposition here.

But, as noted, Plaintiffs have not cited to any authority even suggesting that they are correct about their proffered "joint construction" rule.  Indeed, both Defendants persuasively argue that the Liberty Policy (as to XL) and the XL Primary Policy (as to Liberty) would constitute extrinsic evidence, which could not be used to construe the single policy in question on each motion where the policy language is unambiguous.  *See, e.g.*, *Adamo v. Fire Ins. Exch.*, 219 Cal.App.4th 1286, 1298 (2013).  As such, while the Court might otherwise ordinarily be inclined to allow them an opportunity to amend to add allegations about the context in which they negotiated changes to the two relevant policies, there does not appear to be any purpose to allowing that opportunity here.

In their next attempt to sidestep the plain language of the policies, Plaintiffs argue that liability/loss should be allocated between the two insurer's policies according to their "time on the risk."  But both Defendants sensibly point out that, without coverage, there is nothing to allocate amongst two or more insurers.

Plaintiffs also believe that the plain language of the policy provisions at issue here should not control because the policies could have used a separately-defined term – "Interrelated Wrongful Acts" – to make the intent behind Liberty's "Run-off Endorsement" exclusion and XL's "Prior Acts" exclusion (discussed *infra*) clear:  "Had the Primary Insurer Defendants wished to exclude liability for Wrongful Acts on the basis that said Acts were factually or causally related to other acts outside the policy period, they could have done so – quite simply – by including the already-defined term 'Interrelated Wrongful Acts' in their respective exclusions."  Docket No. 64, at 16:12-17:1.  But the effect of those provisions is clear *without* use of that term.  Defendants were under no obligation to use that term (which they have argued serves a separate purpose under the policies, in any event[11]) to accomplish that objective.

---

[11] *See* Docket No. 66, at 2:22-28, 10:13-22; Docket No. 69, at 11:28-12:6.

Finally, Plaintiffs argue that the policy interpretations Defendants argue for on these motions would lead to unconscionable results, and the Court therefore should decline to adopt their arguments.  But as Plaintiffs themselves recognize, *see* Docket No. 64, at 20:8-10, unconscionability requires a lack of meaningful choice on the part of the party against whom the contract is sought to be enforced.  The central point of Plaintiffs' Opposition, insofar as interpretation of the key provisions is concerned, is that ChinaCast was negotiating the end of one primary policy and the beginning of another, and according to Plaintiffs that negotiation was purposefully-structured in a particular manner that ChinaCast believed (wrongly, it appears[12]) would cover its exposure.  There is no prospect of Plaintiffs making out a case for unconscionability given what they assert (outside of the SAC's allegations) occurred.

Unable to make out a case for coverage, Plaintiffs' claims for breach of the Liberty Policy must fail.  With Plaintiffs having failed to viably plead a loss covered by the policy, Liberty then argues that Plaintiffs may not recover by way of a bad faith action, citing decisions to that effect under both California and Delaware law.  *See, e.g.*, *Benavides v. State Farm Gen. Ins. Co.*, 136 Cal.App.4th 1241, 1250 (2006).  Plaintiffs seemingly concede this point in their Opposition.  *See* Docket No. 64, at 7:25 ("[I]f there is no breach of the policy, there can be no bad faith.").  For good measure, Liberty argues that even if the Court were not able to dismiss the SAC based upon the coverage issue, any bad faith liability would be barred under both California and Delaware law because Liberty's coverage position was, at the least, not unreasonable – *i.e.*, because of application of the "genuine dispute" doctrine.  *See Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal.App.4th 335, 347 (2001); Croskey, Heeseman, Ehrlich & Klee, CAL. PRAC. GUIDE:  INSURANCE LITIGATION (The Rutter Group 2017), ¶¶ 12:618-618.1, at 12B-99 – 100.  Again citing both California and Delaware law, Liberty concludes its motion by taking the position that, without a finding of bad faith, Plaintiffs cannot recover either attorney's fees or punitive damages.

---

[12] XL somewhat accurately portrays Plaintiffs' position here (on ChinaCast's behalf) as a case of "buyers' remorse."  Docket No. 66, at 3:9-10.

Plaintiffs appear to have no response to any of these follow-on points,[13] other than an apparent citation to *MacKinnon* for the proposition that if the policy's provisions are susceptible to any reasonable construction other than the one Liberty proposes, the motion to dismiss must be denied.  As Liberty points out, however, *MacKinnon*'s discussion made no reference to the effect, if any, of its analysis on a *bad faith* claim. Plaintiffs' citation to its "reasonableness" discussion, therefore, is meaningless in this context.

For the foregoing reasons, Liberty's motion is granted in full.  Plaintiffs having presented no basis in which they might conceivably amend as it relates to the claims and issues before the Court, the dismissal is without leave to amend.

### C.  Motion Two – XL's MTD

XL moves to dismiss all six claims against it (though, as to the fifth claim, only with respect to the XL Primary Policy[14]).  Similar to one aspect of Liberty's motion, XL argues that an exclusion – in this case, a "Prior Acts" exclusion – bars coverage for the claims.  Here, that exclusion excludes coverage for any claims "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any act, error, omission, misstatement, misleading statement, neglect, breach of duty, Wrongful Act, Company Wrongful Act or Employment Wrongful Act committed or allegedly committed prior to December 1, 2011."  Docket No. 54-5.  XL notes that "ChinaCast was sued, and ultimately found liable, for issuing false and misleading statements from February 2011 to April 2012," Docket No. 57-1, at 2:4-5, and argues that it was the pre-December 1, 2011 fraudulent acts that caused each statement – even those made after December 1, 2011 – to be false and misleading.  As the Court's discussion of Liberty's motion makes clear, this is an accurate characterization of the Securities Litigation's scope.

XL's motion is based on the same principles of interpretation that are key to resolving Liberty's motion – a plain reading of the policy's terms, including its Prior Act

---

[13] There is some debate whether the "genuine dispute" doctrine applies to third-party cases.  *See* Croskey, Heeseman, Ehrlich & Klee, CAL. PRAC. GUIDE:  INSURANCE LITIGATION (The Rutter Group 2017), ¶ 12:618, at 12B-99.

[14] XL does not seek dismissal of the cause of action against it for declaratory relief under its 2010-2011 excess policy.  *See* Docket No. 57-1, at 3:10-11.

exclusion. The exclusion clearly excludes coverage for acts committed prior to December 1, 2011. But XL also convincingly argues that, even with respect to any post-December 1, 2011 Wrongful Acts alleged in the Securities Litigation, those acts would fall within the Prior Acts exclusion as well, because of its breadth.

The Court agrees. The language used in the Prior Acts exclusion is quite expansive. As XL puts it, "[h]ere, the Lead Plaintiffs (and now the Plaintiffs) asserted that misstatements after December 1, 2011 were wrongful precisely because the statements perpetuated the same pre-December 1, 2011 myth that the company was financially stable and that its internal financial mechanisms were adequate." Docket No. 57-1, at 13:21-14:1; *see also* Docket No. 66, at 7:21-24 ("For the handful of wrongful acts after December 1, 2011, the connection to pre-December 1, 2011 misconduct is more than 'merely coincidental' and fits squarely within the broad parameters of the Prior Acts Exclusion."). The post-December 1, 2011 Wrongful Acts unquestionably "aris[e] out of," "directly or indirectly result[] from" or, at the very least, "involve[e]" "act[s], error[s], omission[s], misstatement[s], [or] misleading statement[s]" allegedly committed prior to that date.

In its Reply brief, XL joins Liberty in the observation that Plaintiffs never actually attempt to contend with the actual language used in the key provision at the heart of this motion – the Prior Acts exclusion. In the context of assessing Liberty's motion, the Court has already explained why the approaches Plaintiffs *have* chosen to take in response are unconvincing.[15] There is therefore no reason why Plaintiffs' contract-based claims would have any better success on this motion.

Like Liberty, XL also argues that because Plaintiffs' contract claims fail, they have no viable claim for breach of the implied covenant of good faith and fair dealing. And also like Liberty, it contends that even if the Court were to deny the motion as to the contract-based claims, the "genuine issue/dispute" doctrine would preclude Plaintiffs' bad faith claim because XL's coverage position was not "unreasonable." This, XL also contends, precludes any attorney's fee award as well. Again, as mentioned above,

---

[15] With respect to Plaintiffs' loss allocation argument, XL argues that the "time on the risk" principle applies only to occurrence-based insurance policies, not claims-made insurance policies such as those at issue here. The Court need not reach that argument considering its earlier conclusion that Plaintiffs' argument necessarily presupposes coverage – a fact Plaintiffs have failed to demonstrate here.

Plaintiffs have offered little apparent response, and none that is convincing.

      As with Liberty's motion, therefore, the Court grants XL's motion, without leave to amend, leaving (as to this defendant) only Plaintiffs' fifth claim insofar as it applies to XL's 2010-2011 excess policy.

**III.**  **<u>Conclusion</u>**

      The Court grants both motions, without leave to amend.